**STATE OF MAINE**                                    **SUPERIOR COURT**

Cumberland, ss.


**ROBERT D. BRADY, JR. et al.**

Plaintiffs

v.                          **Docket No. PORSC-CV-16-0302**

**TARALAINE ESTATES**
**HOMEOWNERS ASSOCIATION et al.**



STATE OF MAINE
Cumberland ss Clerk's Office
JUN 29 2018 1:16 pm
RECEIVED

Defendants


AMENDED DECISION AND JUDGMENT

This civil case came before the court for trial April 24, 2018, with all parties and counsel present. The trial was electronically recorded.

After the trial, counsel submitted proposed findings of fact and conclusions of law. On the understanding that the parties had completed their post-hearing filings, the court issued its Decision and Judgment dated May 21, 2018.

In issuing the Decision and Judgment, the court may have overlooked that the parties had until May 22, 2018 to file replies to each other's proposed findings.[1] Defendants filed their reply May 22, 2018. On receiving the court's Decision and Judgment, Defendants filed a Motion for Reconsideration. The court has granted the

---

[1] The court has no recollection one way or the other and has not independently verified the May 22 deadline having been set but accepts Defendants' counsel's representation to that effect.

1

Motion and reconsidered its rulings in the form of this Amended Decision and Judgment.

Based on the entire record, the court makes findings of fact, adopts conclusions of law, and renders judgment as follows:

1. In 1989, a Maine partnership called Taralaine Developers established a 10-lot residential subdivision in the Town of Sebago, abutting Anderson Road near the western shore of Sebago Lake. The subdivision was called Taralaine Estates. The subdivision property included, in addition to the 10 lots, a private road called Taralaine Drive and another road called Kiddy Drive; a dedicated open space area of 3.921 acres, and a waterfront lot set aside as dedicated open space for the benefit of the subdivision lots. *See* Defs. Ex. 4 (subdivision plan for Taralaine Estates).

2. The waterfront lot is located along the lake shore, across Anderson Drive from the subdivision lots. It was originally created in 1957 as Lot 9 in the Great Shoals Terrace subdivision development, and, as a result, several Great Shoals Terrace lot owners have access rights, along with the Taralaine Estates lot owners. *See* Defs. Ex. 3 (consent judgment in *Page v. Taralaine Developers*, Super. Ct., Cum. Cty., Me, Docket No. CV-95-343, Jan. 8, 1997).

3. The Taralaine Estates subdivision is depicted on the Taralaine Estates subdivision plan recorded at Plan Book 180, Page 53, Cumberland County Registry of Deeds. *See* Defs. Ex. 4. Following Planning Board approval of the subdivision plan in August 1989, the Taralaine Estates subdivision was legally established pursuant to a Declaration of Common Easements, Restrictions, Covenants and Reservations of

2

Rights dated October 12, 1989 [hereinafter "the Declaration"], and recorded in the Cumberland County Registry of Deeds, Book 8945, Pages 315-21.

4. The Declaration calls for the rights and obligations it creates to be "administered, enforced and funded in part by a Maine non-profit corporation called The Taralaine Estates Homeowners Association." Defs. Ex.10 at 1. Article III of the Declaration defines the structure and operation of the Association. *Id.* at 4.

5. Records of the Maine Secretary of State indicate that the developer formed the Taralaine Estates Homeowners Association, but that it went through a series of administrative suspensions for failure to file annual reports during the 1990's and 2000's and is now administratively dissolved. In 2012, another Maine non-profit, also called Taralaine Estates Homeowners Association, was formed—it is that entity which is a Defendant in this case. *See* Defs. Ex. 19.

6. The Declaration defines the dedicated common areas and roads of the subdivision and establishes several covenants regarding the size and use of residential structures and other matters. *See* Defs. Ex. 10 at 2-3. It provides for the covenants to run with the land and be binding on all lot owners and their heirs and assigns. *Id.* at 5.

7. Article II of the Declaration provides for the Declarant to deed over to the Association the roadways, open space, easements and common areas in the subdivision "prior to the sale by Declarant of the seventh (7th) lot in the subdivision," and that "the Declarant's obligations and liabilities with respect to same shall thereupon cease."

8. Article V of the Declaration sets forth declarant rights, "running in favor of Declarant, its successors and assigns," including the right, "[u]ntil the initial sale by Declarant of at least seventy (70%) percent of the total number of lots in the Subdivision," to appoint or remove officers of the Association and to veto any action of the Association. Defs. Ex. 10 at 5. The same Article also provides that, '[u]ntil the initial sale of each and every lot in the Subdivision, Declarant may: ... [m]odify any lot not then conveyed by Declarant." *Id.*

9. The Taralaine Estates subdivision plan recorded at Plan Book 180, Page 53, Cumberland County Registry of Deeds, sets forth Planning Board conditions and requirements for the subdivision. *See* Defs. Ex. 4.

10. In May 1989, the Taralaine Estates Homeowners Association enacted a First Amendment to its bylaws adding "[t]o Article VIII the following new sections" 1 through 6. However, the original Association bylaws themselves are not in the record and, according to the parties, have not been located.

11. Ten years elapsed after the Taralaine Estates subdivision was approved, without Taralaine Developers having sold any of the 10 subdivision lots.

12. In 1999, Taralaine Developers sold all of the real estate in the Taralaine Estates subdivision to Robb Peck McCooey Real Estate Management Corporation. *See* Defs. Ex. 12. The Taralaine Developers deed to the Robb Peck firm conveys the shared waterfront lot to the rights of the owners of Lots 1-10 to use it, along with others. The deed conveys the 10 subdivision lots and the roadways and open space in the Taralaine Estates subdivision "subject to the October 1989 Declaration of

4

Covenants recorded in Book 8945, Page 315 and to all restrictions shown on the 1989 plan recorded in Plan Book 180, Page 53." *Id.*

13. On its face, the deed conveys only real estate—the waterfront parcel, identified as "Parcel 1"; the Taralaine Estates subdivision lots, roads, open spaces and reserved right of way, collectively identified as "Parcel 2"; three other strips of land not pertinent here, and "any other real estate in Sebago, Maine described in the 1988 deed to Taralaine Developers . . ." Defs. Ex. 12.

14. The deed from Taralaine Developers to Robb Peck McCooey contains no mention of any transfer of declarant rights, nor does it refer more generally to the transfer of any personal rights or interests that could be deemed to include declarant rights. *See id.* Also, there is no bill of sale or other evidence in the record indicating that Taralaine Developers transferred its declarant rights to the Robb Peck McCooey corporation by some means other than through the deed.

15. Later in 1999, the Robb Peck McCooey company sold Lot 3 in the Taralaine Estates subdivision to Alvin Fleming and Rosemary Kulow. *See* Defs. Ex. 16.

16. In 2001, the Robb Peck McCooey corporation merged with another entity into an entity named Remco, LLC. *See* Defs. Ex. 13.

17. In 2005, Remco LLC sold Lot 9 to Plaintiffs Robert D. Brady, Jr. and Jennifer M. Brady. *See* Defs. Ex. 15.

18. In 2006, Plaintiff Edward Manning, as trustee for two family trusts, the Courtney Manor Realty Trust and the Blake Manor Realty Trust, purchased Lot 3

5

from Alvin Fleming and Rosemary Kulow, and purchased Lot 2 from Remco, LLC. *See* Defs. Ex. 16.

19. During most of the twelve years that Robb Peck McCooey and/or Remco owned Taralaine Estates, those companies evidently arranged for periodic grading and snow plowing on Taralaine Drive and for mowing of common areas, and also arranged for the dock at the common waterfront lot to be installed each spring and removed each autumn, and otherwise managed the activities that a declarant or a homeowners' association would be responsible for. A Remco representative named Bob Murphy was the liaison with Plaintiff Brady and Plaintiff Manning. Remco sent them bills every six months for Remco's plowing, mowing and other expenses, and Mr. Murphy indicated that each of the 10 lots was being allocated one/tenth of the expenses. Plaintiffs Brady and Manning made contributions toward common road or waterfront expenses while Remco was managing those activities. *See* Pls. Ex. 3. They viewed Remco as doing a good job overall.

20. The record does not reveal in what capacity Robb Peck McCooey or Remco were purporting to act—their actions were consistent with what a subdivision declarant might do in managing common area matters, but were also consistent with what the owner of the majority of the lots in a subdivision might do in taking the lead in managing the Homeowners' Association. However, no formal meetings of the Association were convened.

21. There is no deed or conveyance in the record establishing that Taralaine Developers, Robb Peck McCooey or Remco ever deeded the roadways or the common

6

areas to the Association. However, the First Amendment to the Taralaine Estates Homeowners Association bylaws indicates that, as of May 1989, the Association was to own and maintain Taralaine Drive and the emergency access right of way. *See* Defs. Ex. 18, section 6.

22. During 2009-11, the last two years of Remco's ownership, Remco essentially stopped managing road and waterfront activity, and Plaintiffs Brady and/or Manning had to take over what Remco had been doing in terms of snow plowing and arranging for the dock at the waterfront parcel to be installed and taken out.

23. In 2011, Defendant Miller Investment Group, LLC (MIG) purchased all of Remco's real estate in the Taralaine Estates subdivision, including the seven lots still owned by Remco, the waterfront parcel, the open space and the roadways and rights of way. *See* Def. Ex. 1.

24. At the same time, MIG received a bill of sale for "all rights and interests of Grantor [Remco], if any, as 'Declarant'" under the Declaration of Common Easements, Restrictions, Covenants and Reservation of Rights recorded by Taralaine Developers in 1989. *See* Defs. Ex. 9.

25. In 2015, MIG sold Lot 5 of the Taralaine Estates subdivision to Plaintiffs Tibor Tscheke and Gisela Tscheke.

26. In April 2016, MIG convened a meeting of the Homeowners Association at which members of the Miller family were elected directors and a set of bylaws was enacted. *See* Defs. Ex. 23.

7

27. The Plaintiffs are all residents of Massachusetts who have constructed houses on their lots. Taralaine Drive is a gravel road that provides primary access to all 10 lots. Kiddy Way provides emergency access to the upper portions of the subdivision and also as a way for lot owners to walk to the common waterfront lot.

28. Virtually since its purchase from Remco, MIG has acted as the declarant for the Taralaine Estates subdivision, and has taken responsibility for road maintenance, plowing and management of the waterfront parcel, including collecting annual fees from the Great Shoals Terrace lot owners who have access rights to the common waterfront parcel pursuant to the consent judgment in *Page v. Taralaine Developers, supra. See* Defs. Ex. 3.

29. Plaintiffs have generally cooperated with MIG's management of the Taralaine Estates subdivision in recognition of MIG's ownership of the majority of the lots, but do not acknowledge that MIG has succeeded as Taralaine Developers as declarant. Plaintiffs also have some specific objections to MIG's management.

30. Snowplowing has been one area of contention. MIG has taken over plowing of snow during the winter, but Plaintiffs contend that MIG's plowing creates too narrow a passage. They cite an instance of an oil fuel delivery truck being unable to gain access to one of the residences for a needed fuel delivery

31. Plaintiffs also say that MIG has failed to maintain Kiddy Lane appropriately—they say that erosion problems are not being addressed.

32. Plaintiffs also contend that MIG has been renting out a property by the week, in violation of the Taralaine Estates covenant limiting property rentals to 30

8

days minimum. However, it is not clear from the record whether the rented property is on any of the Taralaine Estates lots, so this allegation will not be considered further.

33. Plaintiffs say MIG has been acting in an arbitrary manner in connection with the Homeowners' Association. Plaintiffs contend that MIG ignored their viewpoint in purchasing a dock for the waterfront area instead of attempting to repair the existing dock. They say MIG caused the Association to elect members of the Miller family as Association directors and caused the Association to adopt bylaws without Plaintiffs' input. Plaintiffs acknowledge that they were notified of the April 2016 Association meeting that MIG convened at Joseph Miller's home on Anderson Road, and they say they chose not to attend at their counsel's advice.

34. MIG's position, presented through the testimony of its member, Joseph Miller, is that, as declarant, it is entitled to take all of the actions taken to date. MIG says it has tried to work with the Plaintiffs. It also says it has fronted common expenses for the past several years and has not been reimbursed by Plaintiffs for their shares. MIG seeks reimbursement in this case for what it claims the Plaintiffs owe.

35. The parties in this case are seeking declaratory relief, as well as injunctive and damages relief. *See* 14 M.R.S. §5953 (declaratory judgment statute). Because the issues involve the parties' respective rights and obligations under written contracts and deeds, declaratory relief is appropriate, and injunctive relief may be appropriate. *See Colquhoun v. Webber*, 684 A.2d 405, 411 (Me. 1996) ("[T]he declaratory judgment remedy should be liberally construed to provide a simple and

9

effective means by which parties may secure a binding judicial determination of their legal rights, status, or relations pursuant to statutes and written instruments . . .").

36. Plaintiffs are asking the court to declare that declarant rights have terminated by virtue of Taralaine Developers' conveyance of all 10 lots to Robb Peck McCooey; that MIG is not entitled to exercise declarant rights with respect to the Taralaine Estates subdivision, to invalidate the Association bylaws enacted in April 2016, and to reconstitute the Association to function consistently with the Declaration.

37. Defendants MIG and Association ask the court to ratify and validate their actions and require the Plaintiffs to reimburse MIG for their share of common expenses.

38. The central issue in this case is whether MIG is the successor declarant to Taralaine Developers, or is simply the owner of six of the 10 Taralaine Estates lots. The resolution of that issue depends on the interpretation of documents in the record. Resolution of that issue will resolve a number of the other questions raised by the parties, including the status of the Association as well as the status of the roads, easements and common areas within the Taralaine Estates development.

39. The court concludes that MIG has the burden of persuasion on its claim to successor declarant status. *See Hodgdon v. Campbell*, 411 A.2d 667, 670 (Me.1980) (in declaratory judgment action, "the party asserting the affirmative of the controlling issues also assumes the burden of proving the prima facie elements of his asserted claim by a preponderance of the evidence").

10

40. Construction of an unambiguous contract or deed presents a question of law. *See Green v. Lawrence*, 2005 ME 90, ¶¶7-8, 877 A.2d 1079, 1082 (deed construction); *Estate of Plummer*, 666 A.2d 116, 119 (Me.1995) (contract construction). The language must be given its ordinary meaning, and the plain meaning controls. None of the deeds and contracts at issue in this case contains any material ambiguity, and, in any event, neither side presented extrinsic evidence of the parties' intent, so the analysis perforce must remain within the four corners of the various instruments.

41. MIG's claim to be the current declarant derives from the Bill of Sale by which Remco sold its declarant rights, "if any," to MIG. Defs. Ex. 9. However, Plaintiffs point out that Remco could sell only what it owned, and they contend that Remco did not acquire declarant rights, because the deed from Taralaine Developers to Remco's predecessor, Robb Peck McCooey Real Estate Management sold only Taralaine Developers' ownership interest in real estate and did not transfer declarant rights. *See* Defs. Ex. 12.

42. MIG's position regarding the deed from Taralaine Developers to Robb Peck McCooey is that, because Robb Peck McCooey acquired the entire Taralaine Estates subdivision (along with other real estate), Robb Peck McCooey must be deemed to have acquired declarant rights as well and to have passed them along to Remco, which therefore could convey them to MIG. In other words, according to MIG, the deed from Taralaine Developers to Robb Peck McCooey did not need to be explicit in conveying declarant rights—they were conveyed along with the real estate.

11

43. MIG's argument essentially amounts to the contention that declarant rights run with the land, at least when the declarant conveys an entire subdivision, and do not need to be separately or specially conveyed.

44. Were Taralaine Estates a condominium project rather than a residential subdivision, the Quitclaim Deed with Covenant from Taralaine Developers to the Robb Peck McCooey firm would plainly not suffice to transfer declarant rights. Among other reasons, the Maine Condominium Act, which predates the deed, requires a recorded instrument transferring "special declarant rights," and requires the instrument to be signed by the transferee. *See* 33 M.R.S. § 1603-104. The Taralaine Developers deed to Robb Peck McCooey makes no mention of declarant rights and is signed only by the grantor.

45. Taralaine Estates is plainly not subject to the Maine Condominium Act, *see id.* § 1601-103(7) ("Any real estate development consisting exclusively of clustered, detached, single family residences is not a condominium, unless so designated in the declaration").

46. However, the Act reflects the general principle that declarant rights in a development are personal rights that do not run with the land and need to be transferred in order for the transferee to become a successor declarant. *See* Annot., 4 A.L.R.3d 570, §2, 4(a) (1965 & Supp. 1982). *See also Board of Managers of Medinah on Lake Homeowners Ass'n v. Bank of Ravenswood,* 295 Ill. App. 3d 131, 692 N.E.2d 402, 229 Ill. Dec. 629 (Ill. App. Ct. 1998); *Toepper v. Brookwood Country Club Rd. Ass'n,* 204 Ill. App. 3d 479, 561 N.E.2d 1281, 149 Ill. Dec. 585 (Ill. App. Ct. 1990); *Fairways of*

*Country Lakes Townhouse Ass'n v. Shenandoah Dev. Corp.*, 113 Ill. App. 3d 932, 447 N.E.2d 1367, 69 Ill. Dec. 680 (Ill. App. Ct. 1983); *Peoples Fed. Sav. & Loan Ass'n of S. C. v. Resources Planning Corp.*, 358 S.C. 460, 596 S.E.2d 51 (S.C. 2004); *Larkin v. City of Burlington*, 172 Vt. 566, 772 A.2d 553 (Vt. 2001).

47. Because declarant rights are personal rights, not rights in real estate, and do not run with the land, the Maine Short Form Deeds Act does not apply to a transfer of declarant rights, and the conveyance of Taralaine Developers' real estate to Robb Peck McCooey did not automatically convey declarant rights to Robb Peck McCooey. *See* 33 M.R.S. § 773 ("In a conveyance of real estate all rights, easements, privileges and appurtenances *belonging to the granted estate* shall be included in the conveyance, unless the contrary shall be stated in the deed.") (emphasis added).

48. The transfer of declarant rights need not necessarily be in a separate instrument, if the deed conveying real estate operates to convey declarant rights as well, either generally or specifically. For example, if a deed includes the grantor's "rights" in the real estate conveyed, the general reference to "rights" may be sufficient to convey the grantor's declarant rights. *See In re Poplar Ridge, LLC*, 526 Bankr R. 147, 151 (W.D.N.C. 2015).

49. Whether the deed from Taralaine Developers to Robb Peck McCooey conveyed declarant rights is a question of deed construction. For the following reasons, the court concludes that the deed did not convey declarant rights:

13

- The deed purports to convey only real estate. As the cases cited above hold, a conveyance of real estate only does not automatically convey declarant rights—something more is required.

- The deed contains neither a specific reference to declarant rights nor even a general reference to the grantor's rights in the conveyed real estate that could be interpreted as a conveyance of Taralaine Developers' declarant rights.[2]

- The deed recites that the conveyance is subject to the 1989 Declaration of Covenants. Because the Declaration provides the declarant with certain rights beyond those provided to lot owners, a deed intended to convey declarant rights would not contain the "subject to" language.

50. In addition, as noted above, there is no extrinsic evidence that supports a finding that Taralaine Developers' declarant rights were transferred to Robb Peck McCooey. The record is completely silent as to whether Remco was purporting to act as a successor declarant, or merely acting as the owner of the majority of the lots in Taralaine Estates and therefore the entity that could exercise control of the Association. The first indication of anyone after Taralaine Developers purporting to act as declarant comes only when MIG acquired the real estate from Remco.

---

[2]  The fact that nothing in Taralaine Developers deed to Robb Peck McCooey makes reference to the grantor's rights distinguishes this case from cases in which transfer documents outside the deed plainly indicate the grantor's intent to convey its declarant rights along with the real estate. *See, e.g., Hughes v. New Life Development Corp.*, 387 S.W.2d 453, 465-66 (Tenn. 2012) (transaction that included developers' residential subdivision plans and rights to name of development indicated parties' intent to transfer declarant rights).

51. Moreover, the fact that Remco's bill of sale conveyed "all rights and interests of Grantor, *if any*, as 'Declarant'" (emphasis added) undermines the argument that Remco considered itself the declarant. In fact, because Remco was the successor by merger to Robb Peck McCooey, Remco's failure (or refusal) to warrant or covenant to MIG that Remco owned the declarant rights could be deemed indicative of Robb Peck McCooey's understanding that the deed to it from Taralaine Developers did not convey declarant rights.

52. Although Article V of the Declaration purports to permit Taralaine Developers to convey declarant rights to "successors and assigns," Defs. Ex. 10 at 5, the record does not establish that it ever did so. MIG's predecessors in title could not convey what they did not own. Because Taralaine Estates did not convey declarant rights to the Robb Peck McCooey firm, Remco did not acquire the rights and could not transfer them to MIG. The court thus finds and concludes that MIG has not met its the burden to show it is the successor declarant for the Taralaine Estates subdivision.

53. MIG's argument that it is the successor declarant is based on the language of the deeds that the court has just addressed, but also asserts that, because the Taralaine Estates Subdivision Plan requires restrictive covenants to be recorded as part of the Plan, *see* Defs. Ex. 4, Condition 9, the Declaration was incorporated into the Taralaine Estate Subdivision Plan referred to in the deed, "and all rights were conveyed to MIG within the recorded deeds." *See* Defendants' Proposed Findings of Fact and Conclusions of Law at 6.

15

54. However, MIG's conclusion does not follow from the premise—restrictive covenants are different than declarant rights. The fact that the Plan requires restrictive covenants to be recorded so they run with the land has no bearing on whether the Taralaine Developers deed conveyed declarant rights to the Robb Peck McCooey firm.

55. Accordingly, the court's declaratory judgment declares MIG not to be the successor declarant for Taralaine Estates. It declares MIG to be a lot owner having the same rights as the Plaintiffs in the Association and the property owned by the Association, with one vote per lot.

56. The question arises as to the current status of declarant rights. Declarant rights terminate when a subdivision declarant no longer owns any interest in the real estate comprising the subdivision but has not transferred its declarant rights, as occurred here. *See Armstrong v. Roberts*, 254 Ga. 15, 325 S.E.2d 769, 700 (1985); *Fairways of Country Lakes v. Shenandoah Dev. Corp.*, 447 N.E.2d 1367, 1369-70 (Ill. App. 2 Dist. 1983); *Richmond v. Pennscott Builders, Inc.*, 251 N.Y.S.2d 845, 43 Misc. 2d 602, 606 (1964).

57. This is also the outcome called for by Article V, section 2, of the Declaration, which calls for declarant rights to terminate when Taralaine Estates has conveyed at least seven of the 10 lots.

58. When Taralaine Developers conveyed all 10 lots and the remainder of the real estate within Taralaine Estates to Robb Peck McCooey Real Estate Management Corporation, without conveying Taralaine Estates' declarant rights, by operation of

16

law, the declarant rights terminated, and the roads, easements and common areas within Taralaine Estates were automatically conveyed by operation of law to the Association. The court concludes that MIG owns only the six lots it acquired from Remco, and the Association owns the remaining real estate within Taralaine Estates, pursuant to the Declaration.

59. The termination of declarant rights raises the question of the validity of actions taken by MIG through the Association—the elections and votes and other actions taken since MIG took ownership interest of the lots.

60. Although Plaintiffs challenge the validity of actions taken by MIG and members of the Miller family with regard to the corporation formed in 2012 by MIG and members of the Miller family, the court finds and concludes that MIG as owner of the majority of the lots in Taralaine Estates had the ability to act as incorporator of the Taralaine Estates Homeowners Association domestic non-profit corporation established through the filing of Articles of Incorporation with the Maine Secretary of State January 18, 2012 and assigned charter number 20120292ND. *See* Defs. Ex. 19. Accordingly, that corporation constitutes the legal entity known as Taralaine Estates Homeowners Association for purposes of the Declaration.

61. As noted above, the Plaintiffs have generally consented and cooperated in MIG's and the Miller family's leadership of the Association, although the Plaintiffs do not agree with all aspects of MIG's and the Association's activities. Plaintiffs plainly have not consented to the actions taken in April 2016 regarding the election of Association directors and adoption of bylaws. Thus, the court hereby confirms and

ratifies all actions taken to date by the Taralaine Estates Homeowners Association, except for the election of directors and adoption of the current bylaws, both of which occurred in April 2016. The officers and directors of the Association may continue to function until a further meeting of members is called.

62. The current bylaws are problematic in certain respects—MIG is listed as a successor declarant and the references in section 3 and section 5.3 to the declarant's power to remove directors are rendered invalid and void by this judgment. *See* Defs. Ex. 23.

63. In addition, the current bylaws appear to be written—deliberately or not-- in a way that unreasonably curtails the ability of lot owners other than MIG, as the owner of six lots, to participate in Association matters, and therefore, they are vulnerable to the Plaintiffs' legal challenge. An example is the provision at section 4.1 that requires five members to request a special meeting, and another example is the provision at section 13 that requires a majority of members to propose an amendment to the bylaws. Only MIG in practice can exercise these powers.

64. Also, as Plaintiffs assert, the Association meeting does not appear to have been convened and the bylaws do not appear to have been adopted in a regular manner.

65. Finally, the current bylaws purport to add a lot—Lot 13 as shown on Town of Sebago Tax Map 32—outside the Taralaine Estates subdivision as a member of the Association. *See* Defs. Ex. 23 at 3 (Art. II, sec. 2). The Declaration does purport to reserve for the declarant the right to add other land of the declarant to Taralaine Estates by making the other hand subject to the Declaration. *See* Defs. Ex. 10 at 1 ". .

. any additional land Declarant makes subject to this Declaration by incorporating into the deed conveying such additional land or reference this Declaration [sic]"), although the reservation of that right does not appear later in the list of reserved declarant rights. *See id.* at 5 (Article V Declarant's Rights). In any case, because declarant rights have terminated and MIG is not the successor declarant, the Association cannot expand its membership, except possibly with the consent of all 10 lot owners. (Planning Board approval may also be required).[3]

66. Accordingly, there will need to be a further meeting of members of the Association for the election of directors, and bylaws will also need to be adopted, as the current bylaws are void and unenforceable. The court does not intend to write the new Association bylaws but trusts that they will be enacted fairly. One change that the court deems appropriate but not legally required in light of the history would be to prohibit all directors from being named by MIG. This could be in the form of a bylaw that says that lots under common ownership (defined to be lots owned by the same entity or by affiliates of the entity, or by the same person or persons related to or legally affiliated with the person) cannot nominate candidates for all director positions.

---

[3] However, because Taralaine Developers reserved the right of way leading to Lot 13 and over Taralaine Road, Lot 13 may have rights of access over Taralaine Drive even though it is not a member lot in Taralaine Estates for voting purposes. The Association may have the right to assess Lot 13, if it is ever developed, for a reasonable contribution to road maintenance—an issue beyond the scope of this case.

67. The key to long term harmony in Taralaine Estates is for MIG to recognize and respect the Plaintiff minority owners' status by giving them, not decision-making power, but a meaningful voice in decisions, and for Plaintiffs to recognize and respect MIG's status as majority owner and de facto decision-maker regarding Association matters.

68. Turning to the counts in Plaintiffs' complaint, Plaintiffs will be granted judgment on Count I for declaratory judgment, as set forth below. Defendants will be granted judgment on Count II—declaratory judgment/breach of contract—and Count III of the complaint—breach of contract. First, Defendant MIG has no contractual relationship with the Plaintiffs because it is not the declarant. Second, Plaintiffs may have a contractual relationship with Defendant Association, but have not proved any damages resulting from any breach of a contract. As to Count IV, Plaintiffs are granted judgment against the Association for violation of the Maine Non-Profit Corporation Act with respect to the bylaws, for the reasons stated above, but have not shown any damages resulting from the violation.

69. With regard to the Association's counterclaim, the Association has proved that it is entitled to reimbursement from the Plaintiffs for their fair share of reasonable expenses incurred for the common benefit of Taralaine Estates lot owners. The Association will be granted judgment against Plaintiffs Brady for $2,350 and Plaintiff Manning in his capacities as Trustee for the Courtney Manor Realty Trust and the Blake Manor Realty Trust for a total of $4,652.88.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

20

1. Plaintiffs are granted judgment on Counts I and IV of their Complaint as set forth below. Defendants are granted judgment on Counts II and III of the Complaint.

2. Defendant Taralaine Estates Homeowners Association is granted judgment on its counterclaim against Plaintiffs Robert and Jennifer Brady for $2,350 and against Plaintiff Edward Manning in his capacities as Trustee for the Courtney Manor Realty Trust and Trustee for the Blake Manor Realty Trust for a total of $4,652.88.

3. The court hereby declares as follows in its judgment:

a. The declarant rights in Taralaine Estates terminated when Taralaine Developers conveyed its entire ownership interest in the real estate constituting the Taralaine Estates subdivision to Robb Peck McCooey Real Estate Management Corporation by deed recorded at Book 15090, Page 17, Cumberland County Registry of Deeds, without conveying or otherwise transferring Taralaine Developers' declarant rights.

b. There is no successor declarant for the Taralaine Estates subdivision. Plaintiffs and Defendant Miller Investment Group, LLC have the legal status of lot owners in Taralaine Estates, and as such, are members of the Taralaine Estates Homeowners Association, with one vote for each of the 10 lots owned and the obligation to defray one-tenth of the Association's expenses for each lot owned.

c. The conveyance by Taralaine Developers to Robb Peck McCooey Real Estate Management Corporation by deed recorded at Book 15090, Page 17, Cumberland

21

County Registry of Deeds constituted the initial conveyance by the declarant of more than seventy percent of the total number of lots in the Taralaine Estates subdivision for purposes of Article V, section 2 of the Declaration of Common Easements, Restrictions, Covenants and Reservations of Rights dated October 12, 1989, recorded in the Cumberland County Registry of Deeds, Book 8945, Pages 315-21.

d. By operation of law, upon the conveyance by Taralaine Developers of its entire interest in the Taralaine Estates subdivision to Robb Peck McCooey Real Estate Management Corporation by deed recorded at Book 15090, Page 17, Cumberland County Registry of Deeds, ownership of all areas outside the 10 lots in the Taralaine Estates subdivision, including all easements, roads, common areas and open spaces depicted on the Taralaine Estates subdivision plan recorded at Plan Book 180, Page 53, Cumberland County Registry of Deeds, passed to the Taralaine Estates Homeowners Association, which is the owner of all such areas.

e. The domestic non-profit corporation established through the filing of Articles of Incorporation with the Maine Secretary of State January 18, 2012 and assigned charter number 20120292ND is the Taralaine Estates Homeowners Association for purposes of the Declaration of Common Easements, Restrictions, Covenants and Reservations of Rights dated October 12, 1989, recorded in the Cumberland County Registry of Deeds, Book 8945, Pages 315-21.

f. The bylaws of Taralaine Estates Homeowners Association adopted April 18, 2016 are void and unenforceable.

22

g. The directors shall call a meeting of all lot owners for purposes of electing directors and adopting bylaws within 20 days of the date on which this Decision and Judgment become final. No bylaws shall be adopted unless all lot owners have had at least 14 days' notice of the text, a requirement that may necessitate two meetings of lot owners. The current officers and directors of the Association are authorized to continue functioning until and unless replaced by the directors or members.

4. Each side having substantially prevailed on its claims and counterclaims, the parties shall bear their own costs and attorney fees.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this order by reference in the docket.

Dated June 28, 2018

_____
A. M. Horton, Justice

23

STATE OF MAINE
Cumberland, ss. Clerk's Office

**ROBERT D. BRADY, JR. et al.**                   MAY 2 1 2018
                                                   1:00 pm.
                          Plaintiffs               RECEIVED

              v.                          Docket No. PORSC-CV-16-0302

**TARALAINE ESTATES
HOMEOWNERS ASSOCIATION et al.**

                          Defendants

## DECISION AND JUDGMENT

This civil case came before the court for trial April 24, 2018, with all parties and counsel present. The trial was electronically recorded.

After the trial, counsel submitted proposed findings of fact and conclusions of law, the last of which was docketed May 15, 2018, at which point the court took the case under advisement. Based on the entire record, the court makes findings of fact, adopts conclusions of law, and renders judgment as follows:

1. In 1989, a Maine partnership called Taralaine Developers established a 10-lot residential subdivision in the Town of Sebago, abutting Anderson Road near the western shore of Sebago Lake. The subdivision was called Taralaine Estates. The subdivision property included, in addition to the 10 lots, a private road called Taralaine Drive and another road called Kiddy Drive; a dedicated open space area of

1

3.921 acres, and a waterfront lot set aside as dedicated open space for the benefit of the subdivision lots. *See* Defs. Ex. 4 (subdivision plan for Taralaine Estates).

2. The waterfront lot is located along the lake shore, across Anderson Drive from the subdivision lots. It was originally created in 1957 as Lot 9 in the Great Shoals Terrace subdivision development, and, as a result, several Great Shoals Terrace lot owners have access rights, along with the Taralaine Estates lot owners. *See* Defs. Ex. 3 (consent judgment in *Page v. Taralaine Developers*, Super. Ct., Cum. Cty., Me, Docket No. CV-95-343, Jan. 8, 1997).

3. The Taralaine Estates subdivision is depicted on the Taralaine Estates subdivision plan recorded at Plan Book 180, Page 53, Cumberland County Registry of Deeds. *See* Defs. Ex. 4. Following Planning Board approval of the subdivision plan in August 1989, the Taralaine Estates subdivision was legally established pursuant to a Declaration of Common Easements, Restrictions, Covenants and Reservations of Rights dated October 12, 1989 [hereinafter "the Declaration"], and recorded in the Cumberland County Registry of Deeds, Book 8945, Pages 315-21.

4. The Declaration calls for the rights and obligations it creates to be "administered, enforced and funded in part by a Maine non-profit corporation called The Taralaine Estates Homeowners Association." Defs. Ex.10 at 1. Article III of the Declaration defines the structure and operation of the Association. *Id.* at 4.

5. Records of the Maine Secretary of State indicate that the developer formed the Taralaine Estates Homeowners Association, but that it went through a series of administrative suspensions for failure to file annual reports during the 1990's and

2

2000's and is now administratively dissolved. In 2012, another Maine non-profit, also called Taralaine Estates Homeowners Association, was formed—it is that entity which is a Defendant in this case. *See* Defs. Ex. 19.

6. The Declaration defines the dedicated common areas and roads of the subdivision and establishes several covenants regarding the size and use of residential structures and other matters. *See* Defs. Ex. 10 at 2-3. It provides for the covenants to run with the land and be binding on all lot owners and their heirs and assigns. *Id.* at 5.

7. Article II of the Declaration provides for the Declarant to deed over to the Association the roadways, open space, easements and common areas in the subdivision "prior to the sale by Declarant of the seventh (7th) lot in the subdivision," and that "the Declarant's obligations and liabilities with respect to same shall thereupon cease."

8. Article V of the Declaration sets forth declarant rights, "running in favor of Declarant, its successors and assigns," including the right, "[u]ntil the initial sale by Declarant of at least seventy (70%) percent of the total number of lots in the Subdivision," to appoint or remove officers of the Association and to veto any action of the Association. Defs. Ex. 10 at 5. The same Article also provides that, '[u]ntil the initial sale of each and every lot in the Subdivision, Declarant may: ... [m]odify any lot not then conveyed by Declarant." *Id.*

9. The Taralaine Estates subdivision plan recorded at Plan Book 180, Page 53, Cumberland County Registry of Deeds, sets forth Planning Board conditions and requirements for the subdivision. *See* Defs. Ex. 4.

3

10. In May 1989, the Taralaine Estates Homeowners Association enacted a First Amendment to its bylaws adding "[t]o Article VIII the following new sections" 1 through 6. However, the original Association bylaws themselves are not in the record and, according to the parties, have not been located.

11. Ten years elapsed after the Taralaine Estates subdivision was approved, without Taralaine Developers having sold any of the 10 subdivision lots.

12. In 1999, Taralaine Developers sold all of the real estate in the Taralaine Estates subdivision to Robb Peck McCooey Real Estate Management Corporation. *See* Defs. Ex. 12. The Taralaine Developers deed to the Robb Peck firm conveys the shared waterfront lot to the rights of the owners of Lots 1-10 to use it, along with others. The deed conveys the 10 subdivision lots and the roadways and open space in the Taralaine Estates subdivision "subject to the October 1989 Declaration of Covenants recorded in Book 8945, Page 315 and to all restrictions shown on the 1989 plan recorded in Plan Book 180, Page 53." *Id.*

13. On its face, the deed conveys only real estate—the waterfront parcel, identified as "Parcel 1"; the Taralaine Estates subdivision lots, roads, open spaces and reserved right of way, collectively identified as "Parcel 2"; three other strips of land not pertinent here, and "any other real estate in Sebago, Maine described in the 1988 deed to Taralaine Developers . . ." Defs. Ex. 12.

14. The deed from Taralaine Developers to Robb Peck McCooey contains no mention of any transfer of declarant rights, nor does it refer more generally to the transfer of any personal rights or interests that could be deemed to include declarant

4

rights. *See id.* Also, there is no bill of sale or other evidence in the record indicating that Taralaine Developers transferred its declarant rights to the Robb Peck McCooey corporation by some means other than through the deed.

15. Later in 1999, the Robb Peck McCooey company sold Lot 3 in the Taralaine Estates subdivision to Alvin Fleming and Rosemary Kulow. *See* Defs. Ex. 16.

16. In 2001, the Robb Peck McCooey corporation merged with another entity into an entity named Remco, LLC. *See* Defs. Ex. 13.

17. In 2005, Remco LLC sold Lot 9 to Plaintiffs Robert D. Brady, Jr. and Jennifer M. Brady. *See* Defs. Ex. 15.

18. In 2006, Plaintiff Edward Manning, as trustee for two family trusts, the Courtney Manor Realty Trust and the Blake Manor Realty Trust, purchased Lot 3 from Alvin Fleming and Rosemary Kulow, and purchased Lot 2 from Remco, LLC. *See* Defs. Ex. 16.

19. During most of the twelve years that Robb Peck McCooey and/or Remco owned Taralaine Estates, those companies evidently arranged for periodic grading and snow plowing on Taralaine Drive and for mowing of common areas, and also arranged for the dock at the common waterfront lot to be installed each spring and removed each autumn, and otherwise managed the activities that a declarant or a homeowners' association would be responsible for. A Remco representative named Bob Murphy was the liaison with Plaintiff Brady and Plaintiff Manning. Remco sent them bills every six months for Remco's plowing, mowing and other expenses, and

5

Mr. Murphy indicated that each of the 10 lots was being allocated one/tenth of the expenses. Plaintiffs Brady and Manning made contributions toward common road or waterfront expenses while Remco was managing those activities. *See* Pls. Ex. 3. They viewed Remco as doing a good job overall.

20. The record does not reveal in what capacity Robb Peck McCooey or Remco were purporting to act—their actions were consistent with what a subdivision declarant might do in managing common area matters, but were also consistent with what the owner of the majority of the lots in a subdivision might do in taking the lead in managing the Homeowners' Association. However, no formal meetings of the Association were convened.

21. There is no deed or conveyance in the record establishing that Taralaine Developers, Robb Peck McCooey or Remco ever deeded the roadways or the common areas to the Association. However, the First Amendment to the Taralaine Estates Homeowners Association bylaws indicates that, as of May 1989, the Association was to own and maintain Taralaine Drive and the emergency access right of way. *See* Defs. Ex. 18, section 6.

22. During 2009-11, the last two years of Remco's ownership, Remco essentially stopped managing road and waterfront activity, and Plaintiffs Brady and/or Manning had to take over what Remco had been doing in terms of snow plowing and arranging for the dock at the waterfront parcel to be installed and taken out.

6

23. In 2011, Defendant Miller Investment Group, LLC (MIG) purchased all of Remco's real estate in the Taralaine Estates subdivision, including the seven lots still owned by Remco, the waterfront parcel, the open space and the roadways and rights of way. *See* Def. Ex. 1.

24. At the same time, MIG received a bill of sale for "all rights and interests of Grantor [Remco], if any, as 'Declarant'" under the Declaration of Common Easements, Restrictions, Covenants and Reservation of Rights recorded by Taralaine Developers in 1989. *See* Defs. Ex. 9.

25. In 2015, MIG sold Lot 5 of the Taralaine Estates subdivision to Plaintiffs Tibor Tscheke and Gisela Tscheke.

26. In April 2016, MIG convened a meeting of the Homeowners Association at which members of the Miller family were elected directors and a set of bylaws was enacted. *See* Defs. Ex. 23.

27. The Plaintiffs are all residents of Massachusetts who have constructed houses on their lots. Taralaine Drive is a gravel road that provides primary access to all 10 lots. Kiddy Way provides emergency access to the upper portions of the subdivision and also as a way for lot owners to walk to the common waterfront lot.

28. Virtually since its purchase from Remco, MIG has acted as the declarant for the Taralaine Estates subdivision, and has taken responsibility for road maintenance, plowing and management of the waterfront parcel, including collecting annual fees from the Great Shoals Terrace lot owners who have access rights to the

common waterfront parcel pursuant to the consent judgment in *Page v. Taralaine Developers, supra.* *See* Defs. Ex. 3.

29. Plaintiffs have generally cooperated with MIG's management of the Taralaine Estates subdivision in recognition of MIG's ownership of the majority of the lots, but do not acknowledge that MIG has succeeded as Taralaine Developers as declarant. Plaintiffs also have some specific objections to MIG's management.

30. Snowplowing has been one area of contention. MIG has taken over plowing of snow during the winter, but Plaintiffs contend that MIG's plowing creates too narrow a passage. They cite an instance of an oil fuel delivery truck being unable to gain access to one of the residences for a needed fuel delivery

31. Plaintiffs also say that MIG has failed to maintain Kiddy Lane appropriately—they say that erosion problems are not being addressed.

32. Plaintiffs also contend that MIG has been renting out a property by the week, in violation of the Taralaine Estates covenant limiting property rentals to 30 days minimum. However, it is not clear from the record whether the rented property is on any of the Taralaine Estates lots, so this allegation will not be considered further.

33. Plaintiffs say MIG has been acting in an arbitrary manner in connection with the Homeowners' Association. Plaintiffs contend that MIG ignored their viewpoint in purchasing a dock for the waterfront area instead of attempting to repair the existing dock. They say MIG caused the Association to elect members of the Miller family as Association directors and caused the Association to adopt bylaws without Plaintiffs' input. Plaintiffs acknowledge that they were notified of the April

8

2016 Association meeting that MIG convened at Joseph Miller's home on Anderson Road, and they say they chose not to attend at their counsel's advice.

34. MIG's position, presented through the testimony of its member, Joseph Miller, is that, as declarant, it is entitled to take all of the actions taken to date. MIG says it has tried to work with the Plaintiffs. It also says it has fronted common expenses for the past several years and has not been reimbursed by Plaintiffs for their shares. MIG seeks reimbursement in this case for what it claims the Plaintiffs owe.

35. The parties in this case are seeking declaratory relief, as well as injunctive and damages relief. *See* 14 M.R.S. §5953 (declaratory judgment statute). Because the issues involve the parties' respective rights and obligations under written contracts and deeds, declaratory relief is appropriate, and injunctive relief may be appropriate. *See Colquhoun v. Webber*, 684 A.2d 405, 411 (Me. 1996) ("[T]he declaratory judgment remedy should be liberally construed to provide a simple and effective means by which parties may secure a binding judicial determination of their legal rights, status, or relations pursuant to statutes and written instruments . . .").

36. Plaintiffs are asking the court to declare that declarant rights have terminated by virtue of Taralaine Developers' conveyance of all 10 lots to Robb Peck McCooey; that MIG is not entitled to exercise declarant rights with respect to the Taralaine Estates subdivision, to invalidate the Association bylaws enacted in April 2016, and to reconstitute the Association to function consistently with the Declaration.

9

37. Defendants MIG and Association ask the court to ratify and validate their actions and require the Plaintiffs to reimburse MIG for their share of common expenses.

38. The central issue in this case is whether MIG is the successor declarant to Taralaine Developers, or is simply the owner of six of the 10 Taralaine Estates lots. The resolution of that issue depends on the interpretation of documents in the record. Resolution of that issue will resolve a number of the other questions raised by the parties, including the status of the Association as well as the status of the roads, easements and common areas within the Taralaine Estates development.

39. The court concludes that MIG has the burden of persuasion on its claim to successor declarant status. *See Hodgdon v. Campbell,* 411 A.2d 667, 670 (Me.1980) (in declaratory judgment action, "the party asserting the affirmative of the controlling issues also assumes the burden of proving the prima facie elements of his asserted claim by a preponderance of the evidence").

40. Construction of an unambiguous contract or deed presents a question of law. *See Green v. Lawrence,* 2005 ME 90, ¶¶7-8, 877 A.2d 1079, 1082 (deed construction); *Estate of Plummer,* 666 A.2d 116, 119 (Me.1995) (contract construction). The language must be given its ordinary meaning, and the plain meaning controls. None of the deeds and contracts at issue in this case contains any material ambiguity, and, in any event, neither side presented extrinsic evidence of the parties' intent, so the analysis perforce must remain within the four corners of the various instruments.

10

41. MIG's claim to be the current declarant derives from the Bill of Sale by which Remco sold its declarant rights, "if any," to MIG. Defs. Ex. 9. However, Plaintiffs point out that Remco could sell only what it owned, and they contend that Remco did not acquire declarant rights, because the deed from Taralaine Developers to Remco's predecessor, Robb Peck McCooey Real Estate Management sold only Taralaine Developers' ownership interest in real estate and did not transfer declarant rights. *See* Defs. Ex. 12.

42. MIG's position regarding the deed from Taralaine Developers to Robb Peck McCooey is that, because Robb Peck McCooey acquired the entire Taralaine Estates subdivision (along with other real estate), Robb Peck McCooey must be deemed to have acquired declarant rights as well and to have passed them along to Remco, which therefore could convey them to MIG. In other words, according to MIG, the deed from Taralaine Developers to Robb Peck McCooey did not need to be explicit in conveying declarant rights—they were conveyed along with the real estate.

43. MIG's argument essentially amounts to the contention that declarant rights run with the land, at least when the declarant conveys an entire subdivision, and do not need to be separately or specially conveyed.

44. Were Taralaine Estates a condominium project rather than a residential subdivision, the Quitclaim Deed with Covenant from Taralaine Developers to the Robb Peck McCooey firm would plainly not suffice to transfer declarant rights. Among other reasons, the Maine Condominium Act, which predates the deed, requires a recorded instrument transferring "special declarant rights," and requires the

11

instrument to be signed by the transferee. *See* 33 M.R.S. § 1603-104. The Taralaine Developers deed to Robb Peck McCooey makes no mention of declarant rights and is signed only by the grantor.

45. Taralaine Estates is plainly not subject to the Maine Condominium Act, *see id.* § 1601-103(7) ("Any real estate development consisting exclusively of clustered, detached, single family residences is not a condominium, unless so designated in the declaration").

46. However, the Act reflects the general principle that declarant rights in a development are personal rights that do not run with the land and need to be transferred in order for the transferee to become a successor declarant. *See* Annot., 4 A.L.R.3d 570, §2, 4(a) (1965 & Supp. 1982). *See also Board of Managers of Medinah on Lake Homeowners Ass'n v. Bank of Ravenswood,* 295 Ill. App. 3d 131, 692 N.E.2d 402, 229 Ill. Dec. 629 (Ill. App. Ct. 1998); *Toepper v. Brookwood Country Club Rd. Ass'n,* 204 Ill. App. 3d 479, 561 N.E.2d 1281, 149 Ill. Dec. 585 (Ill. App. Ct. 1990); *Fairways of Country Lakes Townhouse Ass'n v. Shenandoah Dev. Corp.,* 113 Ill. App. 3d 932, 447 N.E.2d 1367, 69 Ill. Dec. 680 (Ill. App. Ct. 1983); *Peoples Fed. Sav. & Loan Ass'n of S. C. v. Resources Planning Corp.,* 358 S.C. 460, 596 S.E.2d 51 (S.C. 2004); *Larkin v. City of Burlington,* 172 Vt. 566, 772 A.2d 553 (Vt. 2001).

47. The transfer of declarant rights need not necessarily be in a separate instrument, if the deed conveying real estate operates to convey declarant rights as well, either generally or specifically. For example, if a deed includes the grantor's "rights" in the real estate conveyed, the general reference to "rights" may be sufficient

12

to convey the grantor's declarant rights. *See In re Poplar Ridge, LLC*, 526 Bankr R. 147, 151 (W.D.N.C. 2015).

48. Whether the deed from Taralaine Developers to Robb Peck McCooey conveyed declarant rights is a question of deed construction. For the following reasons, the court concludes that the deed did not convey declarant rights:

- The deed purports to convey only real estate. As the cases cited above hold, a conveyance of real estate only does not automatically convey declarant rights—something more is required.

- The deed contains neither a specific reference to declarant rights nor even a general reference to the grantor's rights in the conveyed real estate that could be interpreted as a conveyance of Taralaine Developers' declarant rights.

- The deed recites that the conveyance is subject to the 1989 Declaration of Covenants. Because the Declaration provides the declarant with certain rights beyond those provided to lot owners, a deed intended to convey declarant rights would not contain the "subject to" language.

49. In addition, as noted above, the record is completely silent as to whether Remco was purporting to act as a successor declarant, or merely acting as the owner of the majority of the lots in Taralaine Estates and therefore the entity that could exercise control of the Association.

50. Although Article V of the Declaration purports to permit Taralaine Developers to convey declarant rights to "successors and assigns," Defs. Ex. 10 at 5,

13

the record does not establish that it ever did so. MIG's predecessors in title could not convey what they did not own. Because Taralaine Estates did not convey declarant rights to the Robb Peck McCooey firm, Remco did not acquire the rights and could not transfer them to MIG. The court thus finds and concludes that MIG has not met its the burden to show it is the successor declarant for the Taralaine Estates subdivision.

51. MIG's argument that it is the successor declarant is based on the language of the deeds that the court has just addressed, but also asserts that, because the Taralaine Estates Subdivision Plan requires restrictive covenants to be recorded as part of the Plan, *see* Defs. Ex. 4, Condition 9, the Declaration was incorporated into the Taralaine Estate Subdivision Plan referred to in the deed, "and all rights were conveyed to MIG within the recorded deeds." *See* Defendants' Proposed Findings of Fact and Conclusions of Law at 6.

52. However, MIG's conclusion does not follow from the premise—restrictive covenants are different than declarant rights. The fact that the Plan requires restrictive covenants to be recorded so they run with the land has no bearing on whether the Taralaine Developers deed conveyed declarant rights to the Robb Peck McCooey firm.

53. Accordingly, the court's declaratory judgment declares MIG not to be the successor declarant for Taralaine Estates. It declares MIG to be a lot owner having the same rights as the Plaintiffs in the Association and the property owned by the Association, with one vote per lot.

14

54. The question arises as to the current status of declarant rights. Declarant rights terminate when a subdivision declarant no longer owns any interest in the real estate comprising the subdivision but has not transferred its declarant rights, as occurred here. *See Armstrong v. Roberts*, 254 Ga. 15, 325 S.E.2d 769, 700 (1985); *Fairways of Country Lakes v. Shenandoah Dev. Corp.*, 447 N.E.2d 1367, 1369-70 (Ill. App. 2 Dist. 1983); *Richmond v. Pennscott Builders, Inc.*, 251 N.Y.S.2d 845, 43 Misc. 2d 602, 606 (1964).

55. This is also the outcome called for by Article V, section 2, of the Declaration, which calls for declarant rights to terminate when Taralaine Estates has conveyed at least seven of the 10 lots.

56. When Taralaine Developers conveyed all 10 lots and the remainder of the real estate within Taralaine Estates to Robb Peck McCooey Real Estate Management Corporation, without conveying Taralaine Estates' declarant rights, by operation of law, the declarant rights terminated, and the roads, easements and common areas within Taralaine Estates were automatically conveyed by operation of law to the Association. The court concludes that MIG owns only the six lots it acquired from Remco, and the Association owns the remaining real estate within Taralaine Estates, pursuant to the Declaration.

57. The termination of declarant rights raises the question of the validity of actions taken by MIG through the Association—the elections and votes and other actions taken since MIG took ownership interest of the lots.

15

58. Although Plaintiffs challenge the validity of actions taken by MIG and members of the Miller family with regard to the corporation formed in 2012 by MIG and members of the Miller family, the court finds and concludes that MIG as owner of the majority of the lots in Taralaine Estates had the ability to act as incorporator of the Taralaine Estates Homeowners Association domestic non-profit corporation established through the filing of Articles of Incorporation with the Maine Secretary of State January 18, 2012 and assigned charter number 20120292ND. *See* Defs. Ex. 19. Accordingly, that corporation constitutes the legal entity known as Taralaine Estates Homeowners Association for purposes of the Declaration.

59. As noted above, the Plaintiffs have generally consented and cooperated in MIG's and the Miller family's leadership of the Association, although the Plaintiffs do not agree with all aspects of MIG's and the Association's activities. Plaintiffs plainly have not consented to the actions taken in April 2016 regarding the election of Association directors and adoption of bylaws. Thus, the court hereby confirms and ratifies all actions taken to date by the Taralaine Estates Homeowners Association, except for the election of directors and adoption of the current bylaws, both of which occurred in April 2016. The officers and directors of the Association may continue to function until a further meeting of members is called.

60. The current bylaws are problematic in certain respects—MIG is listed as a successor declarant and the references in section 3 and section 5.3 to the declarant's power to remove directors are rendered invalid and void by this judgment. *See* Defs. Ex. 23.

16

61. In addition, the current bylaws appear to be written—deliberately or not--in a way that unreasonably curtails the ability of lot owners other than MIG, as the owner of six lots, to participate in Association matters, and therefore, they are vulnerable to the Plaintiffs' legal challenge. An example is the provision at section 4.1 that requires five members to request a special meeting, and another example is the provision at section 13 that requires a majority of members to propose an amendment to the bylaws. Only MIG in practice can exercise these powers.

62. Also, as Plaintiffs assert, the Association meeting does not appear to have been convened and the bylaws do not appear to have been adopted in a regular manner.

63. Finally, the current bylaws purport to add a lot—Lot 13 as shown on Town of Sebago Tax Map 32—outside the Taralaine Estates subdivision as a member of the Association. *See* Defs. Ex. 23 at 3 (Art. II, sec. 2). The Declaration does purport to reserve for the declarant the right to add other land of the declarant to Taralaine Estates by making the other hand subject to the Declaration. *See* Defs. Ex. 10 at 1 ". . . any additional land Declarant makes subject to this Declaration by incorporating into the deed conveying such additional land or reference this Declaration [sic]"), although the reservation of that right does not appear later in the list of reserved declarant rights. *See id.* at 5 (Article V Declarant's Rights). In any case, because declarant rights have terminated and MIG is not the successor declarant, the Association cannot

17

expand its membership, except possibly with the consent of all 10 lot owners. (Planning Board approval may also be required).[1]

64. Accordingly, there will need to be a further meeting of members of the Association for the election of directors, and bylaws will also need to be adopted, as the current bylaws are void and unenforceable. The court does not intend to write the new Association bylaws but trusts that they will be enacted fairly. One change that the court deems appropriate but not legally required in light of the history would be to prohibit all directors from being named by MIG. This could be in the form of a bylaw that says that lots under common ownership (defined to be lots owned by the same entity or by affiliates of the entity, or by the same person or persons related to or legally affiliated with the person) cannot nominate candidates for all director positions.

65. The key to long term harmony in Taralaine Estates is for MIG to recognize and respect the Plaintiff minority owners' status by giving them, not decision-making power, but a meaningful voice in decisions, and for Plaintiffs to recognize and respect MIG's status as majority owner and de facto decision-maker regarding Association matters.

---

[1]   However, because Taralaine Developers reserved the right of way leading to Lot 13 and over Taralaine Road, Lot 13 may have rights of access over Taralaine Drive even though it is not a member lot in Taralaine Estates for voting purposes. The Association may have the right to assess Lot 13, if it is ever developed, for a reasonable contribution to road maintenance—an issue beyond the scope of this case.

66. Turning to the counts in Plaintiffs' complaint, Plaintiffs will be granted judgment on Count I for declaratory judgment, as set forth below. Defendants will be granted judgment on Count II—declaratory judgment/breach of contract—and Count III of the complaint—breach of contract. First, Defendant MIG has no contractual relationship with the Plaintiffs because it is not the declarant. Second, Plaintiffs may have a contractual relationship with Defendant Association, but have not proved any damages resulting from any breach of a contract. As to Count IV, Plaintiffs are granted judgment against the Association for violation of the Maine Non-Profit Corporation Act with respect to the bylaws, for the reasons stated above, but have not shown any damages resulting from the violation.

67. With regard to the Association's counterclaim, the Association has proved that it is entitled to reimbursement from the Plaintiffs for their fair share of reasonable expenses incurred for the common benefit of Taralaine Estates lot owners. The Association will be granted judgment against Plaintiffs Brady for $2,350 and Plaintiff Manning in his capacities as Trustee for the Courtney Manor Realty Trust and the Blake Manor Realty Trust for a total of $4,652.88.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. Plaintiffs are granted judgment on Counts I and IV of their Complaint as set forth below. Defendants are granted judgment on Counts II and III of the Complaint.

2. Defendant Taralaine Estates Homeowners Association is granted judgment on its counterclaim against Plaintiffs Robert and Jennifer Brady for $2,350

19

and against Plaintiff Edward Manning in his capacities as Trustee for the Courtney Manor Realty Trust and Trustee for the Blake Manor Realty Trust for a total of $4,652.88.

3. The court hereby declares as follows in its judgment:

a. The declarant rights in Taralaine Estates terminated when Taralaine Developers conveyed its entire ownership interest in the real estate constituting the Taralaine Estates subdivision to Robb Peck McCooey Real Estate Management Corporation by deed recorded at Book 15090, Page 17, Cumberland County Registry of Deeds, without conveying or otherwise transferring Taralaine Developers' declarant rights.

b. There is no successor declarant for the Taralaine Estates subdivision. Plaintiffs and Defendant Miller Investment Group, LLC have the legal status of lot owners in Taralaine Estates, and as such, are members of the Taralaine Estates Homeowners Association, with one vote for each of the 10 lots owned and the obligation to defray one-tenth of the Association's expenses for each lot owned.

c. The conveyance by Taralaine Developers to Robb Peck McCooey Real Estate Management Corporation by deed recorded at Book 15090, Page 17, Cumberland County Registry of Deeds constituted the initial conveyance by the declarant of more than seventy percent of the total number of lots in the Taralaine Estates subdivision for purposes of Article V, section 2 of the Declaration of Common Easements, Restrictions, Covenants and Reservations of Rights dated October 12,

20

1989, recorded in the Cumberland County Registry of Deeds, Book 8945, Pages 315-21.

d.   By operation of law, upon the conveyance by Taralaine Developers of its entire interest in the Taralaine Estates subdivision to Robb Peck McCooey Real Estate Management Corporation by deed recorded at Book 15090, Page 17, Cumberland County Registry of Deeds, ownership of all areas outside the 10 lots in the Taralaine Estates subdivision, including all easements, roads, common areas and open spaces depicted on the Taralaine Estates subdivision plan recorded at Plan Book 180, Page 53, Cumberland County Registry of Deeds, passed to the Taralaine Estates Homeowners Association, which is the owner of all such areas.

e.   The domestic non-profit corporation established through the filing of Articles of Incorporation with the Maine Secretary of State January 18, 2012 and assigned charter number 20120292ND is the Taralaine Estates Homeowners Association for purposes of the Declaration of Common Easements, Restrictions, Covenants and Reservations of Rights dated October 12, 1989, recorded in the Cumberland County Registry of Deeds, Book 8945, Pages 315-21.

f.   The bylaws of Taralaine Estates Homeowners Association adopted April 18, 2016 are void and unenforceable.

g.   The directors shall call a meeting of all lot owners for purposes of electing directors and adopting bylaws within 20 days of the date on which this Decision and Judgment become final.   No bylaws shall be adopted unless all lot owners have had at least 14 days' notice of the text, a requirement that may necessitate

21

two meetings of lot owners. The current officers and directors of the Association are authorized to continue functioning until and unless replaced by the directors or members.

4. Each side having substantially prevailed on its claims and counterclaims, the parties shall bear their own costs and attorney fees.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this order by reference in the docket.

Dated May 21, 2018

_____
A. M. Horton, Justice

**Entered on the Docket:** 5·21·18

22